# AFFIDAVIT

I, Matthew Bowlin, being duly sworn, hereby state the following:

1. I am a Special Agent (S/A) with the United States Capitol Police (USCP) assigned to the Threat Assessment Section (TAS), and have been so employed for approximately six years. I have been assigned to the TAS for approximately three years. I am responsible for investigating threats made towards Members of Congress (MOC) and assessing a wide spectrum of cases that involve MOC's and persons of interest who show an inappropriate and/or unusual interest in the elected representatives of the U.S. House of Representatives and the U.S. Senate. Prior to being employed with the USCP, I was a sworn police officer for the Sanford Police Department, Sanford, Florida for approximately three and a half years. During my career as a USCP Officer/Agent and as a Sanford Police Department Officer, I have participated in numerous investigations. In addition, I have received both formal and informal training from a Florida State Law Enforcement Training Academy, Sanford Police Department, Florida Department of Law Enforcement, the Federal Law Enforcement Training Academy, the USCP, and other institutions regarding law enforcement procedure and investigations.

2. This affidavit is made as to request for a search warrant, authorizing the U.S. Capitol Police, the U.S. Secret Service, or the U.S. Secret Service Electronic Crimes Task Force, to search the cell phone seized from Paulino Aparicio following his arrest for violations of 47 U.S.C. § 223(a)(1)(D), pursuant to an arrest warrant authorized by

U.S. Magistrate Judge Barry Garber for the U.S. District Court for the Southern District of Florida.

3. The facts set forth in this affidavit are based on information known to me personally, as well as information communicated to me by other law enforcement agents and witnesses with knowledge of the events described herein, and on my training and experience described in this affidavit. This affidavit does not contain every fact known to me in connection with this investigation; rather, I have set forth facts sufficient to establish probable cause that the offense described took place and that PAULINO APARICIO committed that offense, using a communication device described as a cell phone, further described in this affidavit.

4. On or about June 30, 2008, a staff member (W1) of a particular member of Congress (C1) reported to the Threat Assessment Section (TAS) of the United States Capitol Police that a male caller had called C1's Congressional office in Washington, DC, six times and that the caller was directed by office staff to cease his calls. The same male caller telephoned the Congressional office again that same day and his call was transferred by Congressional staff to the TAS. S/A Benjamin Smith (USCP TAS) spoke to the caller and requested that the caller identify himself. In response, the caller identified himself as PAULINO APARICIO, and provided a date of birth June xx, xxxx, and Social Security Number of xxx-xx-xxxx. S/A Smith entered that information into a law enforcement database and confirmed that the following individual had been previously identified by law enforcement:

      Paulino Aparicio

      Date of Birth: June xx, xxxx

      Social Security Number: xxx-xx-xxxx

      Race: White / Hispanic

      Sex: Male

5.     A review of PAULINO APARICIO's NCIC criminal history revealed that he has a 2004 conviction in Miami-Dade County for harassing and cyberstalking in violation of an injunction.

6.     On or about December 15, 2008, the officer manager (W2) for the same member of Congress contacted your affiant and reported that the same male caller had called C1's Congressional office numerous times on that date. When C1's staff answered, the caller began cursing, made rambling statements, and then would hang up. Your affiant requested that any additional calls by this individual be transferred to the TAS. Your affiant immediately received a transferred call from C1's staff. C1's staff informed your affiant that they recognized the caller as the same individual who had made all the previous calls based on his voice. The transferred call revealed a caller I.D. number of xxx-xxx-xxxx. The caller's statements in this telephone call were filled with profanity and rambling in nature. Your affiant attempted to warn the caller to stop his calls to the Congressional office and the caller terminated the call.

7.     According to telephone toll records obtained by your affiant from MetroPCS, telephone number xxx-xxx-xxxx is assigned to subscriber PAULINO APARICIO, with an address of xxxx Carlyle Ave., Apt. x, Miami Beach, Florida, and a date of birth of June xx, xxxx.  According to the same records, approximately 197 calls were placed from xxx-xxx-xxxx to C1's Congressional office on December 15, 2008, including 68 calls within a one-hour period.

8.     On or about February 3, 2009, another staff member (W3) for C1's office reported to your affiant that a male caller who identified himself as "PAULINO APARICIO" had placed over 100 calls to the Congressional office.  Each of the calls were filled with profanity and rambling in nature and the caller ID feature of the office telephones indicated that the originating telephone number of the calls was xxx-xxx-xxxx.

9.     From on or about March 9, 2009, through on or about March 18, 2009, the same caller telephoned the Congressional office approximately 2,600 times. In each of these calls the caller would use profanity or would hang up when the phone was answered by the Congressional staff.  In all of the calls the Congressional staff were able to identify the caller in various ways.  During some calls, the caller would confirm that he was PAULINO APARICIO when asked by the Congressional staff to identify himself.  The staff members were also able to recognize the voice of the caller as the same individual who had made all of the previous calls.  Finally, the "Caller I.D." function would display telephone number xxx-xxx-xxxx or would indicate that the caller was blocking the Caller I.D. function.

10.  On or about March 19, 2009, at approximately 4:30 p.m., S/A Eric Hoar called number xxx-xxx-xxxx, and spoke with a male who spoke accented English.  S/A Hoar recognized the man's voice as the voice of the same individual who had previously identified himself as PAULINO APARICIO.  During the telephone conversation, the caller told S/A Hoar that his name was "Paulino."

11.  On or about March 24, 2009, more than approximately 100 calls were made from xxx-xxx-xxxx to the Congressional office of C1.  Staff members in that office identified the caller as the same individual who had made the previous calls based on his voice, the blocked "Caller I.D.," and the similar content of his messages.  During many of these calls, the caller called the staff member answering the phone "faggot," "Mr. Nazi," "motherfucker," "Nazi," and "maricon,"[1] and otherwise engaged in unintelligible babble.  According to records obtained from MetroPCS, most, and perhaps all, of these calls were placed from Miami-Dade County within the Southern District of Florida.

12. On March 26, 2009, PAULINO APARICIO was arrested pursuant to the issued arrest warrant for violations of Title  47, United States Code, Section 223(a)(1)(D).  Subsequent to the arrest, PAULINO APARICIO's cell phone in his possession was seized by your affiant and retained as evidence in the case pending in the U.S. District Court in Miami, Florida.  PAULINO APARICIO was advised of his Miranda rights and warnings, by which he waived his rights and agreed to speak to your affiant.  PAULINO APARICIO admitted to making approximately one million calls

from his cell phone, specifically identifying his calls to the "Congress" and the "White House." PAULINO APARICIO stated that he was the only individual to possess the cell phone, the only individual to ever make calls from the cell phone, and that his cell phone was never loaned to anyone. The cell phone seized from PAULINO APARICIO at the time of his arrest and shown to him during our interview is described as a black in color Metro PCS cell phone, with the marking "ZTE" on the exterior cover, and is a "flip" style phone. PAULINO APARICIO confirmed the phone described above, and the cell phone seized from him by your affiant, is one and the same cell phone.

13. Based on the foregoing facts and information, I believe there is probable cause to believe that PAULINO APARICIO did, in interstate communications, make or cause the telephone of another repeatedly or continuously to ring, with the intent to harass any person at the called number, in violation of Title 47, United States Code, Section 223(a)(1)(D) and used the cell phone seized and held as evidence by the U.S. Capitol Police. I also believe that there is probable cause to believe that the cell phone contains digital evidence of the crime being charged, currently stored in the Metro PCS cell phone.

14. Your affiant respectfully requests a search warrant, authorizing the U.S. Capitol Police, and/or the U.S. Secret Service, and/or the U.S. Secret Service Electronic Crimes Task Force, to search the cell phone described above for any and all

---

[1]   Your affiant has learned that "maricon" is a Spanish term meaning "faggot."

electronically-stored contents, which would establish ownership and use of the phone by Paulino Aparicio. Such evidence would include, but not be limited to, the call history or any other electronic data contained in the phone showing calls made to and from that phone; video and photographic images That would associate Paulino Aparicio with the cellular telephone and any information contained within the cell phone to support that the crime of Harassing Telephone Calls, Title 47, United States Code, Section 223(a)(1)(D) did in fact occur from the cell phone seized.

 

_____
MATTHEW BOWLIN
Special Agent, United States Capitol Police


Sworn and subscribed to before me this _____ day of April 2009


_____
UNITED STATES MAGISTRATE JUDGE